UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS D. CLARK,

    Plaintiff,

v.                                    Case No: 2:13-cv-820-FtM-29MRM

SCHOOL BOARD OF COLLIER COUNTY, FLORIDA and MARK ROSENBALM, in his individual capacity,

    Defendants.

**OPINION AND ORDER**

This matter comes before the Court on review of defendant's Motion to Dismiss or for a More Definite Statement (Doc. #42) filed on March 17, 2015. Plaintiff filed a Response in Opposition (Doc. #57) on July 14, 2015. For the reasons set forth below, the motion is denied.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

2

**II.**

On January 28, 2015, plaintiff filed a Second Amended Complaint (Doc. #35), which is now the operative pleading. Plaintiff makes the following assertions and claims:

Plaintiff is an African American male employed by the School Board of Collier County (the School Board) as an Alternative Education Assistant, and was formerly employed as the head basketball coach of Barron G. Collier High School (Barron Collier). Plaintiff is a retired professional basketball player who has had a professional basketball career and a coaching career which each spanned more than 15 years. In 2008, plaintiff was hired as the Head Coach at Barron Collier, for which he was paid a supplemental amount in addition to his teaching salary. Plaintiff was the only African American coach in all of Collier County when he was hired, and the Amended Complaint sets forth numerous examples of his qualifications and stellar performance as the Head Coach.

Defendant Mark Rosenbalm (Rosenbalm) is a Caucasian male who was hired as the Activities and Athletic Director at Barron Collier in 2009. Rosenbalm was plaintiff's supervisor with the power to hire, fire, and make changes to plaintiff's employment status. The School Board is the governing body for the Collier County School District and is Rosenbalm's employer.

Plaintiff alleges that Rosenbalm had a reputation for targeting African American teachers and coaches, was standoffish and rude towards plaintiff from the first meeting, and rarely spoke to plaintiff while readily conversing with the white coaches. Rosenbalm would delay plaintiff's pay while timely paying white coaches, and Rosenbalm created a "good ole boy" environment by catering to white coaches and finding ways to demean plaintiff.

Rosenbalm terminated plaintiff as the Head Coach on March 26, 2012, although plaintiff has continued as a teacher at Barron Collier. Plaintiff was terminated without warning, notice, or cause other than a vague assertion regarding communication, despite the School Board's policy of progressive discipline by providing for written warnings, coaching, and the creation of a corrective action plan before termination. Plaintiff's termination occurred "mere days" after plaintiff led the Barron Collier Varsity Boys Basketball Team to a historic back-to-back appearance in the State Regional Championships, mere days before the basketball awards banquet, and after 4 years of having a winning record. Plaintiff asserts that the termination was discriminatory and race-based, and that Rosenbalm replaced plaintiff with a significantly less qualified white male. Plaintiff's wife contacted School Board Member Cathy Curatolo to

4

report her belief that the termination was racially motivated, but no corrective action was taken and no investigation was initiated.

The Second Amended Complaint (Doc. #35) contains three counts. Count I alleges that the termination as Head Coach was a violation of Title VII, 42 U.S.C. § 2000e-e, by the School Board. Count II alleges that the termination as Head Coach was a violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution by both the School Board and by Rosenbalm in his individual capacity. Count III alleges that the termination as Head Coach was a violation of the Florida Civil Rights Act, Chapter 760, Florida Statutes, by the School Board.

### III.

Defendants challenge the validity of all three counts of the Second Amended Complaint.

**A. Count I:  Title VII Claim Against School Board**

In Count I, plaintiff asserts disparate treatment by the School Board in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2. The School Board seeks dismissal of this count because plaintiff has not adequately alleged the existence of a similarly-situated employee. While recognizing that the Second Amended Complaint added the allegation that plaintiff's replacement was "a white male having significantly less qualifications that Plaintiff," Doc. #35, ¶ 57, the School

5

Board argues that plaintiff was required to specifically allege the qualifications of the replacement head coach. Failing to do so, the School Board asserts, fails to comply with the new pleading standard and the "heightened pleading requirements that protect local officials from suit." (Doc. #42, pp. 3-4.)

The Court finds that Count I is not deficient for any of the reasons argued by the School Board. There is no "heightened pleading rule" which applies to any of the counts in the Second Amended Complaint. Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (finding that imposing a heightened standard conflicts with Rule 8(a)'s express language); Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016) (reaffirming that there is not heightened pleading standard for cases governed by Rule 8(a)(2)). Additionally, even if Count I named a local official as a defendant, there is also no heightened pleading requirement for an individual asserting qualified immunity. Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (finding that the heightened pleading effectively for defendants able to assert qualified immunity was overturned by Iqbal). Finally, given the detailed factual assertions as to plaintiff's qualifications and accomplishments (Doc. #35, ¶¶ 25-32, 48-49), saying plaintiff's replacement was significantly less qualified rather than providing

the evidentiary detail of his qualifications does not render the count any less plausible. The Court finds that Count I is sufficient to plausibly allege a violation of Title VII.

**B. Count II:  § 1983 Claims Against School Board and Rosenbalm**

In Count II, plaintiff asserts that his termination of Head Coach constituted disparate treatment by both defendants in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Defendant Rosenbalm is sued in his individual capacity, and defendant School Board is alleged to have ratified the unlawful termination decision of Rosenbalm by its action or inaction.

Defendants argue that Count II "lacks perfect clarity" and is a "classic shotgun pleading" because it lumps distinct claims with different elements against the School Board and Rosenbalm. (Doc. #43, pp. 4-5.)  "Perfect clarity" is not the standard of course, and the Court does not find the Second Amended Complaint to be a shotgun complaint. Plaintiff incorporates the jurisdictional allegations in paragraphs 1 through 5, and the general allegations of paragraphs 6 through 63 into each count, but does not incorporate the substance of each preceding claim into the next claim. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations

7

and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Plaintiff does not incorporate the paragraphs setting forth the individual claims in the successive count. Given the basic nature of plaintiff's claims – that Rosenblum discriminated against him because of his race and the School Board ratified that discrimination – the Court finds Count II is not an improper shotgun pleading.[1]

Defendants also assert that Count II alleges a violation of the Fourteenth Amendment, pursuant to § 1983, but fails to identify which component of the Fourteenth Amendment is applicable. Additionally, defendants argue that Count II does not state a plausible claim under any component of the Fourteenth Amendment. (Doc. #42, pp. 6-12.) Count II repeatedly identifies the equal protection clause, and only the equal protection clause, as the portion of the Fourteenth Amendment which is at issue in this case. (Doc. #35, ¶¶ 1, 19, 22, 63, 68, 77, 79, 93.) Plaintiff's Response confirms that he is asserting an equal protection violation (Doc.

---

[1] It is true that some of the incorporated paragraphs are not relevant to a particular count. E.g., there is no administrative exhaustion requirement for a § 1983 claim, yet paragraphs 6 through 10 are incorporated into the § 1983 count. This surplusage is not sufficient to render the count deficient.

#57, p. 12), and therefore equal protection is the only right at issue in Count II.

The School Board argues that Count II fails to allege an equal protection violation because loss of a supplemental extra-curricular coaching position to which there is no right does not qualify as an adverse employment action. (Doc. #42, p. 11.) The Court disagrees.

In this case, it is alleged that this coaching position was a paid position, and that plaintiff was terminated from this paid position solely because of his race. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citation omitted), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). Actions that affect compensation, including the use or benefit of a pay raise, can be proof of a "serious and material change affecting" compensation and an adverse employment action. Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008). As there is an actual loss in supplemental wages, the Court finds that plaintiff has sufficiently alleged an adverse employment action.

See, e.g., Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005) (denial of a raise significantly affects compensation and is sufficient to establish an adverse employment action). The fact that plaintiff retained another position (teacher) does not make his termination as a paid head coach any less of an adverse employment action. While plaintiff was not entitled to the position of head coach as a matter of right, he was entitled as a matter of right not to be terminated from that position because of his race.

The School Board next argues that plaintiff has failed to allege facts showing that a policy or custom was the moving force behind the alleged violation in Count II, as is required for a § 1983 claim against a government entity. (Doc. #42, pp. 6-7.) Plaintiff responds that he did allege such a policy or custom, that the School Board's ratification of the conduct constitutes a policy, and that longstanding acquiescence in the decisions of subordinates constitutes a custom. (Doc. #57, pp. 9-12.)

The School Board is correct that the Second Amended Complaint does not allege that the discriminatory termination was pursuant to a policy or custom of the School Board which was the moving force for the action. Indeed, the Second Amended Complaint specifically asserts that the School Board had policies against such discrimination (Doc. #35, ¶ 23), and policies requiring

progressive discipline (id. at ¶ 44). The Second Amended Complaint further alleges that the actions by Rosenbalm were "not in accordance with the custom or usage of" the School Board (id. at 55), and the termination "ran so far afield from the usual customs, practices, and norms prevalent in the Collier County School District" (id. at ¶ 56). Therefore, Count II alleges liability by the School Board because it *ratified* the unlawful termination by Rosenbalm. (Id. at ¶ 78.)

While Count II fails set forth a policy or custom by the School Board, there are several different ways of establishing municipal liability under § 1983.

> A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). See Monell [v. Dep't of Soc. Servs.], 436 U.S. [658,] 661, 694–95 [(1978)]; McCusick v. City of Melbourne, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991). And a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Matthews v. Columbia Cty., 294 F.3d 1294, 1297 (11th Cir. 2002).

Hoefling v. City of Miami, 811 F.3d at 1279.

The Court rejects plaintiff's argument that Count II sufficiently pleads either ratification or acquiescence. (Doc. #57, pp. 10-11.) While the Amended Complaint stated otherwise, Doc. #18, ¶¶ 70 & 81, the Second Amended Complaint (Doc. #35) alleges that it was Rosenbalm, not the School Board, who had final termination authority. More specifically, the Second Amended Complaint alleges that Rosenbalm "had the power to hire, fire, and make other changes in the employment status of the Plaintiff" (Doc. #35, ¶ 18), and "had operational control and employment authority over all athletic programs and coaches. . ." (id. at ¶ 33), which "included oversight of and hiring and termination decisions for any and all coaching staff. . ." (id. at ¶ 34). Under the theory as set forth in Count II, no ratification of Rosenbalm's decisions was needed, however ratification must be of the basis for the decision, not just the decision itself. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). "[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold

the government liable on a ratification theory." Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015) (citation omitted). Proof of a single incident is not sufficient to impose liability on the School Board, and the single act of ratifying a termination of an employee is not pervasive enough to constitute a custom. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (citations omitted).

Defendant Rosenbalm asserts that he is entitled to qualified immunity from suit because he clearly acted within the scope of his discretionary authority to terminate plaintiff, and plaintiff "has failed to allege ultimate facts that state a constitutional violation." (Doc. #42, pp. 14-15.) Plaintiff does not address this argument in his response. The Court does not disagree with the qualified immunity principles set forth by defendant Rosenbalm. However, the Court finds that the Second Amended Complaint does plausibly set forth a constitutional violation. Thus, the only basis articulated for qualified immunity is without merit.

### C. Count III: Florida Civil Rights Act

In Count III, plaintiff alleges wrongful termination and disparate treatment under the state counterpart to Title VII, the Florida Civil Rights Act, Chapter 760. Defendants seek dismissal for the same reasons as in the Title VII claim. The Court agrees

13

that the same analysis is appropriate, and rejects defendants' arguments for the same reasons stated as to Count I.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss or for a More Definite Statement (Doc. #42) is **GRANTED IN PART AND DENIED IN PART** as follows:

**(1)** The motion is **DENIED** as to Count I;

**(2)** The motion is **GRANTED** as to the School Board as to Count II and is **DENIED** as to Rosenbalm as to Count II; and

**(3)** The motion is **DENIED** as to Count III.

**(4)** Plaintiff may file a Third Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order. No further amendments will be permitted.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of April, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record

14